# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
P. O. Box 301555
Montgomery, AL 36130-1555

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges



RELEASED
AUG 16 2002
CLERK
ALA COURT CRIMINAL APPEALS

Lane W. Mann
Clerk
Wanda K. Ivey
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

**MEMORANDUM**

CR-01-0458    Shelby Circuit Court CC-00-884; CC-00-885; CC-00-886

James Edward Graham, Jr. v. State of Alabama

WISE, Judge.

   The appellant, James Edward Graham, Jr., was convicted of rape in the first degree, § 13A-6-61(a)(3), Ala. Code 1975; sodomy in the first degree, § 13A-6-63(a)(3), Ala. Code 1975; and sexual abuse in the first degree, § 13A-6-66(a)(3), Ala. Code 1975. The appellant, a habitual felony offender, was sentenced to life imprisonment for first degree rape, life imprisonment for first degree sodomy, and 15 years' imprisonment for first degree sexual abuse, all to run concurrently. In addition, the trial court ordered the appellant to pay a $50 assessment to the Crime Victims Compensation Fund in each case and court costs. This appeal followed.

   The evidence at trial tended to establish that at the time J.R. was five or six, she lived in a two-bedroom trailer

1

in Calera with her mother, S.R.; older brother, M.R.; younger brother, C.R.; and her stepfather, the appellant. J.R. testified that one afternoon, while her mother and brothers were away from the trailer, the appellant entered her room carrying a dress. The appellant asked J.R. if she would like to try the dress on and J.R. began to take off her leggings. In order to hurry the process, the appellant removed J.R.'s shirt and took off J.R.'s panties. Once undressed, the appellant placed J.R. on the bed and took his clothes off while holding J.R. down by her wrists.

The appellant kissed J.R. on her forehead and continued kissing her body until eventually reaching and kissing her vagina. The appellant instructed J.R. to touch his penis but she refused. The appellant's penis touched J.R.'s wrist. Likewise, J.R. refused to open her lips when the appellant tried to put his penis in her mouth. The appellant's penis touched J.R.'s lips. The appellant proceeded to attempt to put his penis in J.R.'s vagina but could not insert his penis in her vagina. After first attempting to force his penis in to J.R.'s vagina, the appellant stuck his fingers in her vagina, took his fingers out, and then stuck his penis in J.R.'s vagina. The appellant's penis remained in J.R.'s vagina until the appellant heard a knock on the front door of the trailer. The appellant quickly put back on his pants and threatened to kill J.R. if she told anyone about the incident. While the appellant went to the front door, J.R. put back on her panties, shirt and leggings. J.R. testified that her panties felt slimy and wet after the incident. The appellant returned and again threatened J.R., telling J.R. that no one would believe her if she told them about the incident.

Evidence further established that in 1995, Cindy Greer, an investigator with the Department of Human Resources, interviewed J.R. in response to allegations of abuse and neglect. During the interview, no allegations of sexual abuse were made. J.R. and her siblings were subsequently taken away from her mother and the appellant and placed in foster care.

In 1997, Greer was again called to investigate an allegation of abuse at the request of J.R.'s foster parents. The foster parents requested an investigation into alleged sexual abuse suffered by J.R. while in the care of the appellant and S.R. During the investigation, J.R. reported a

time when the appellant touched her breasts and inner thigh. J.R. further reported abusive incidents where other men were allowed to sleep in her bed and touch her. She stated that the appellant had taken her and her brothers to a "sex party." J.R. also told Greer that the appellant had once caught her clothes on fire, left her puppies outside to die in the cold, threw puppies onto the interstate where they were run over, broke an aquarium and stomped on J.R.'s fish, and pushed S.R. against a door causing it to fall on M.R. and cut his eye. As a result of the interview the children remained in foster care.

In 1999, Greer was called upon a third time to investigate allegations of abuse. At the time of the third interview, J.R. was 11 years old and had been adopted by her foster parents. During this interview J.R. revealed the incident of sexual abuse that occurred when she was 5 or 6. J.R. further recounted incidents where the appellant and her mother would line the children against a wall and throw knives at them, as well as, incidents where the children would be forced to stay outside in a blizzard. J.R. testified that she waited to talk of the incidents until she felt secure in her adoption and knew she would not have to go back and live with the appellant and her mother.

An examination of J.R. by Dr. Kim Oh, a pediatrician with UAB, revealed scarring around the hymen in the three o'clock and nine o'clock positions. Dr. Oh testified that the hymen was intact and the scars appeared to be old based on discoloration.

I.

The appellant first contends that the trial court erred in allowing portions of J.R.'s 1997 and 1999 statements made on video to be given to the jury. Specifically, the appellant argues that the statements were highly prejudicial and pertained to the appellant's character through specific prior bad acts or conduct.

Prior to opening statements and prior to the appellant's cross-examination of J.R., the trial court conditionally ruled the 1997 and 1999 taped interviews inadmissible. The State noted that they did not intend to offer evidence of these

prior bad acts in their case in chief, but did note a desire to bring the contents of the tapes into evidence if the defendant "opened the door" to the contents of the tapes during trial.

Our review of the record on appeal reveals that during cross-examination of J.R., the appellant relied heavily on J.R.'s 1997 and 1999 videotaped statements made to DHR investigator Cindy Greer. In an effort to attack J.R.'s credibility, the appellant questioned J.R. about specific portions of the videotaped statements in order to show inconsistencies between J.R.'s statements to Greer and J.R.'s trial testimony. Further, the appellant also sought to determine why J.R. waited until her 1999 interview to reveal the incidents involving the appellant. The appellant extended this same line of questioning during his cross-examination of Greer, again asking specific questions about the taped interviews.

> "'[I]t is a general principle that, where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment.' Leonard v. State, 369 So. 2d 873, 875 (Ala.Crim.App.), cert denied, 369 So. 2d 877 (Ala. 1979). Even evidence of other offenses may be admissible for the purpose of explaining an adverse inference created during cross-examination by the other party. As the Alabama Supreme Court has stated:
>
>> "'Th[e general] exclusionary rule [prohibiting evidence of other offenses] notwithstanding, when one party brings out part of a transaction or conversation, the other party may inquire further into the matter or bring out the whole subject for further examination. Logan v. State, 291 So. 2d 194 (Ala.Crim.App. 1977). This proposition of law, also known as the "rule of completeness," 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise

4

>  > from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein.'
>
> "Ex parte Tucker, 474 So. 2d 134, 135 (Ala. 1985)."
>
> Worthington v. State, 652 So. 2d 790, 794-95 (Ala.Crim.App. 1994)(quoting Sistrunk v. State, 630 So. 2d 147, 152 (Ala.Crim.App. 1993)).
>
> A review of the record indicates, and the State argues on appeal, that following the appellant's cross-examination of J.R. and Greer, it became necessary to introduce the tapes in their entirety in order to explain the adverse inferences created during the appellant's cross-examination. Specifically, the State argues that the tapes were necessary to show J.R.'s statements were not inconsistent as portrayed by the appellant during cross-examination and to explain why J.R. waited to reveal the incident until 1999.
>
> This Court has previously held that where part of a victim's "statement is first presented by the defense, the State [has] the right to 'prove the whole of what was said at the same time and relating to the same subject matter, in order that its true meaning and import might be fully comprehended.'" Abram v. State, 574 So. 2d 986, 988 (Ala.Crim.App. 1990)(citing C. Gamble, McElroy's Alabama Evidence § 316.01 at 705 n.2 (3d ed. 1977)). In the instant case, introduction of the video tape as a whole was proper in order to place the specific portions questioned by the appellant on cross-examination into context, thereby allowing the jury to fully comprehend the subject matter instead of focusing soley on the portions raised by the appellant. Furthermore, by attempting to discredit J.R.'s story, and by going into specific questions and answers in the 1997 and 1999 interview tapes, the appellant opened the door for the State to introduce the interview tapes in their entirety.
>
> While we are aware of the prejudicial nature of the

5

material contained in the tapes,[1] the probative value supports the admission of the tapes. "Before the probative value of evidence of collateral bad acts may be held to outweigh its potential prejudicial effect, the evidence must be 'reasonably necessary' to the State's case." R.D.H. v. State, 775 So. 2d 248, 254 (Ala.Crim.App. 2000).

Transcripts of the taped interviews, provided as part of the record on appeal, reveal J.R.'s fear of the appellant caused by the years of abuse. The interviews also reveal the threats posed by the appellant if J.R. spoke of the abuse to anyone. Further, the taped interviews rebut the appellant's contention propounded at trial regarding J.R.'s delay in reporting the rape incident. Indeed, at the end of the 1999 interview J.R. states that she is now coming forward because she knows the appellant is a potential threat to other girls, and she feels no more fear now that she is being adopted and the appellant will not be able to find her.

The evidence provided in the 1997 and 1999 taped interviews became reasonably necessary once the appellant opened the door during his cross-examination of J.R. and Greer. Under Rule 403, Ala.R.Evid., relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The power to make this determination is vested in the trial court. See Hayes v. State, 717 So. 2d 30, 37 (Ala.Crim.App. 1997). We will not disturb such a determination unless it is clearly an abuse of discretion. We can find no such abuse in the instant case. Therefore, the appellant's argument is without merit.

---

[1] The transcripts of the 1997 and 1999 taped interviews indicate prior incidents involving: (1) appellant pouring gasoline and setting J.R.'s clothes on fire; (2) appellant forcing J.R.'s puppies to stay outside where 4 died; (3) appellant throwing puppies across interstate to their death; (4) appellant stomping on J.R.'s fish; (5) appellant causing a door to fall, injuring J.R.'s brother and (6) appellant throwing knives at J.R. and her brother while standing against a kitchen wall.

II.

The appellant next contends that the trial court erred in refusing to allow him to call Liz Stewart, a counselor for the victim, as a witness, and review the counselor's records based on counselor-client privilege. Specifically, the appellant argues that the trial court's refusal deprived him of his constitutional right to confront the witnesses against him.

Rule 503A(b), Ala.R.Evid., states "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, a confidential communication made for the purpose of facilitating the rendition of counseling services to the client." Although the privilege belongs to the client, the person who was the licensed counselor at the time of the communication is presumed to have authority to claim the privilege on behalf of the client. Rule 503A(c), Ala.R.Evid.

The record indicates that J.R. asserted the counselor-client privilege through her counselor, Liz Stewart. In the instant case, the appellant stipulated to the assertion of the privilege by Liz Stewart, thereby acknowledging that she would not take the stand and testify with regards to her prior communications with J.R. Therefore, the appellant cannot now claim that the trial court erred in refusing to allow him to call Liz Stewart as a witness. Moreover, the appellant's constitutional claim is equally without merit.

In support of his claim on appeal, the appellant asserts that Stewart's records might contain impeachment testimony and that the trial court should conduct an in camera inspection of those records to determine if they contain impeachment evidence. However, our review of the record reveals that the appellant's sole purpose in calling Liz Stewart, as stated to the trial court, was to get into communications she had with J.R. while performing counseling services. (R. 562.) This purpose does not conform with Rule 503A of the Alabama Rules of Evidence. Accordingly, in camera inspection of Liz Stewart's records was unnecessary and the trial court did not err. Therefore, the appellant's argument is without merit.

III.

The appellant further contends that the trial court erred in failing to grant his challenges for cause. Specifically, the appellant argues that prospective jurors S.M. and D.B. indicated probable prejudice and, therefore, were appropriate and justified challenges for cause.

> "To justify a challenge of a juror for cause, there must be a statutory ground as set forth in Ala. Code 1975, § 12-16-150, or some other matter that discloses absolute bias or favor and leaves nothing to the trial court's discretion. See <u>Nettles v. State</u>, 435 So. 2d 146, 149 (Ala.Crim.App.), aff'd, 435 So. 2d 151 (Ala. 1983). See also, <u>Clark v. State</u>, 621 So. 2d 309, 321 (Ala.Crim.App. 1992). The trial court's ruling on a challenge for cause is accorded great weight and will not be disturbed on appeal unless it is clearly shown to be an abuse of discretion. <u>Nobis v. State</u>, 401 So. 2d 191 (Ala.Crim.App.), cert. denied, 401 So. 2d 204 (Ala. 1981)."

<u>Ex parte Myers</u>, 699 So. 2d 1285, 1287 (Ala. 1997). "The test to be applied to determine whether to disqualify a prospective juror for cause is whether the juror can set aside his or her opinion and try the case fairly and impartially according to the law and the evidence." <u>Living v. State</u>, 796 So. 2d 1121, 1133 (Ala.Crim.App. 2000)(citing <u>Ex parte Taylor</u>, 666 So. 2d 73, 82 (Ala. 1995).

The appellant first challenged S.M. for cause. In his brief, the appellant cites, in pertinent part, the following colloquy as evidence that S.M. could not be fair and impartial:

> "[DEFENSE COUNSEL]: Now, if it were to be brought to light that my client has been previously convicted of a theft-related charge in the past or things of that nature, property type crimes, does anybody here feel that because somebody has a criminal background that is a theft-related charge, that that would make them more prone to commit a sex offense? Does anybody at all feel that way?

8

           (Venire respond.)

"...

"[S.M.]: I would think that it would show that they didn't have much regard for the law.

"[DEFENSE COUNSEL]: But do you think that if -- do you believe that if a person is -- has been a criminal before and has broken the law, that that would make him more prone or susceptible to breaking the law in a sex-related crime?

"[S.M.]: Well, any crime. It would show he didn't have much regard for the law.

"[DEFENSE COUNSEL]: So if that were to be a fact in this case that Mr. Graham had been convicted of a property-type crime before, would that make my job more difficult?

"[S.M.]: I would try to be fair about it, but yes.

"[DEFENSE COUNSEL]: Do you think you could lay that -- I mean, would you consider that at all a factor in determining not his credibility but his guilt? Would you think he would be more prone to be guilty of this charge because he's committed a crime in the past?

"[S.M.]: Not more prone to be guilty."

(R. 109-111.)

    During follow-up questioning of S.M. by the State the following colloquy took place:

"[PROSECUTOR]: ... at the end of the case, after all the evidence has been presented, the judge will tell you what the law is. He will tell you what you can consider and what you can't consider and how you are supposed to consider it. You can listen to what he tells you and apply it to what you've got during the course of the trial, can you not?

"[S.M.]: I will do my best.

(R. 156-157.)

Based on the above colloquy, the trial court did not abuse its discretion in denying the appellant's challenge for cause. "[E]ven though a prospective juror admits to a potential bias, if further voir dire examination reveals that the juror in question can and will base his decision on the evidence alone, then a trial judge's refusal to grant a motion to strike is not error." Perryman v. State, 558 So. 2d 972, 977 (Ala.Crim.App. 1989)(citations omitted).

The appellant's next challenge for cause was made with regard to D.B. The following colloquy took place during a follow-up voir dire examination of D.B.:

"[THE COURT]: ... we have some follow-up questions for you.

"[PROSECUTOR]: ... you were asked by Mr. Pino, counsel for the defendant, to speculate on the effect of a certain piece of evidence that may or may not be introduced during the course of this trial, that being drug and alcohol use or abuse by the defendant during the time frame that the act that's made the basis of this case is supposed to have occurred. That's one fact among many that may or may not be brought out during the course of this trial.

"Can you take everything, all the facts, all the evidence, all the testimony, and fairly weigh all of that and apply the judge's instructions to that in reaching and coming to a verdict in this case?

"[D.B.]: Like I said before, alcohol and drugs, you know, if that was present when this occurred, that will weigh on me. I can't say how much, but I know it can affect a person. And especially when -- I mean, in all different situations, but as far as the sex thing goes, I know that can weigh in on it. I can't say a hundred percent that that won't affect my thoughts.

10

"[PROSECUTOR]: No one is saying that if that piece of evidence is presented that it shouldn't be weighed by you in reaching your verdict. All we're trying to do is make sure that you can weigh all of the evidence in accordance with what the judge tells you the law is in reaching your verdict. Nobody says that you don't have to weigh that particular piece of evidence.

"[D.B.]: Yes.

"[PROSECUTOR]: Just that you need to consider all of the evidence.

"[D.B.]: Sure, and I can, yes."

(R. 159-160.)

The follow-up question presented by the State supports the trial court's denial of the appellant's challenge for cause of D.B. "'[A] proper challenge for cause exists only when a prospective juror's opinion or bias is so fixed that he or she could not ignore it and try the case fairly and impartially according to the law and the evidence.'" Parker v. State, 587 So. 2d 1072, 1082 (Ala.Crim.App. 1991)(citations omitted). The trial court did not abuse its discretion in denying the appellant's challenge where D.B. indicated his opinion was not so fixed as to prevent him from considering the evidence impartially according to the law. Therefore, the appellant's argument is without merit.

IV.

The appellant also contends that the trial court erred by denying his Batson motion.[2] Specifically, the appellant argues that the trial court erred in not conducting a hearing on his motion where the State struck 3 out of 4 black members from the venire.

The general rule under Alabama law is that "'the burden of persuasion is initially on the party alleging

---

[2]Batson v. Kentucky, 476 U.S. 79 (1986).

11

discriminatory use of peremptory challenges to establish a prima facie case of discrimination.'" Ex parte Bird, 594 So. 2d 676, 679 (Ala. 1991)(quoting Ex parte Branch, 526 So. 2d 609, 622 (Ala. 1987)). "Until this burden is met, the challenged party is under no obligation to offer explanations for its peremptory strikes." Farrior v. State, 728 So. 2d 691, 699 (Ala.Crim.App. 1998)(citing Jackson v. State, 594 So. 2d 1289, 1292 (Ala.Crim.App. 1991)).

In support of his Batson motion, the appellant argued that the State struck 75% of the black venire members using peremptory strikes, thereby leaving only one black member on the jury panel. "'Merely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case.'" Farrior, 728 So. 2d at 699 (quoting Edwards v. State, 628 So. 2d 1021, 1024 (Ala.Crim.App. 1993). The appellant did not meet his burden of persuasion by going beyond mere numbers and showing a prima facie case of racial discrimination. The trial court's determination as to whether the appellant has established a prima facie case of racial discrimination will no be disturbed on review unless it is clearly erroneous. Madison v. State, 718 So. 2d 90 (Ala.Crim.App. 1997). The trial court's denial of the appellant's Batson motion was not clearly erroneous, and, therefore, will not be disturbed on appeal.

V.

The appellant contends that the evidence presented at trial was insufficient to support the jury's verdict. However, the appellant's brief addresses the weight of the evidence and not the sufficiency of the evidence. Specifically, the appellant primarily claims that there was no corroborating evidence supporting the victim's testimony and points to inconsistencies in the victim's testimony.

"The 'weight of the evidence' refers to '"a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other."' '[I]t is not the province of this court to reweigh the evidence presented at trial.'" Curry v. State, 601 So. 2d 157, 159 (Ala.Crim.App. 1992)(citations omitted).

"In determining the sufficiency of the evidence to

12

sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution." Pierson v. State, 677 So. 2d 830, 832 (Ala.Crim.App. 1996)(quoting Faircloth v. State, 471 So. 2d 485, 489 (Ala.Crim.App. 1984)). "'The role of the appellate courts is not to say what the facts are. Our role...is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.'" Cunningham v. State, 630 So. 2d 154, 156 (Ala.Crim.App. 1993)(quoting Bankston v. State, 358 So. 2d 1040, 1042 (Ala. 1978)).

Viewed in a light most favorable to the prosecution, the evidence offered by the State was sufficient for the jury to find the appellant guilty beyond a reasonable doubt. See Williams v. State, 710 So. 2d 1276, 1340 (Ala.Crim.App. 1996). The State presented the testimony of J.R., the appellant's victim. The testimony of the victim alone is sufficient to establish a prima facie case of rape. Pierson v. State, 677 So. 2d 830, 832 (Ala.Crim.App. 1996).

Moreover, the weight and probative value to be given the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So. 2d 189, 214 (Ala.Crim.App. 1996). We will not invade the province of the jury and reweigh the evidence. Therefore, the appellant's argument is without merit.

Based on the foregoing, the judgment of the trial court is affirmed.

**AFFIRMED.**

McMillan, P.J., and Cobb, Baschab, and Shaw, JJ., concur.